No. 18,590.

ADAM SCOTT, SR., et al., *Appellants,* V. ADAM SCOTT, JR., *Appellee.*

SYLLABUS BY THE COURT.

1. EJECTMENT—*Deed—Effectual Reservation of Life Estate.* In a deed conveying a farm from parents to their son the following clause was inserted immediately after the description: "This conveyance is made upon the express condition that the grantors, Adam Scott and Elizabeth Scott shall each have an estate for life in said conveyed lands and tenements." . . . This clause was effectual to reserve a life estate in the parents.

2. SAME—*Possession Given Under Agreement to Maintain Grantors—Breach of Agreement.* On delivery of this conveyance the grantee was given possession upon his oral promise to support the grantors, who were over seventy-five years of age, during their lives. The promise was performed by the son for over two years, when, his health failing, he removed to Colorado, and his brother, the defendant, then living in that state, came home to take his place, and took the posses-

sion and management of the farm. He resided with and cared for his parents at their home—not on the farm in question—for a year, and provided for his parents during that time and for three or four months afterwards, when he ceased to do so upon the statement of his mother that they would look to another brother for their future support. It does not appear that the father was consulted, and he called upon the grantee, still in Colorado, to furnish the support as promised, but this was not done. The parents meanwhile had but $180 income a year, which was from another source, for their support, and which was not sufficient. The grantee in the deed died in August, 1911. The defendant, who had taken his place, was still in possession of the farm, receiving its income of about $1100 per year, and a demand for possession was made upon him, which being refused, this suit was brought to recover the life estate. It is held that the plaintiffs are entitled to possession and to a recovery of the value of the use of the farm for three years, subject to a deduction for taxes and interest paid, and other equitable counterclaims, if any.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed January 10, 1914. Reversed.

W. F. Challis, and E. C. Brookens, both of Westmoreland, for the appellants.

E. D. Woodburn, A. E. Crane, and F. T. Woodburn, all of Holton, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action in ejectment by parents against their son to recover the possession of a farm in which they claim an estate for life.

In April, 1904, the plaintiffs conveyed to their son, David Scott, a farm of 475 acres, subject to mortgages amounting to $4500. The conveyance was made in the ordinary form of a warranty deed but contained the following clause inserted immediately after the description:

"This conveyance is made upon the express condition that the grantors, Adam Scott and Elizabeth Scott shall each have an estate for life in said conveyed lands and tenements." . . .

At the date of the conveyance the grantors, Adam Scott, sr., and Elizabeth Scott, his wife, were of the age of 79 and 75 years, respectively. They also owned another farm of 160 acres upon which they lived, called the home place. In consideration of this conveyance and the transfer of some personal property, David agreed to care for his parents while they lived. The agreement was verbal, and can only be stated in general terms, but it was faithfully performed until August, 1906, when by reason of failing health David was compelled to leave his father and mother and move to Colorado, where his brother, the defendant, then lived. In October, the defendant, Adam Scott, jr., came to his parents and told them he had come to take David's place. They had, it seems, been informed of his intended coming for that purpose by letter from David, but the agreement between the brothers is not further shown. Adam, jr., moved with his family into the house with his parents on the home place, and also entered upon the possession and management of the farm in controversy, with their consent and approval, and cared for them until August, 1907, when he left the home, but continued to furnish supplies for three or four months longer, when he ceased to do so because his mother told him that they had made arrangements with another son to provide for them. He said to her that whenever there was anything he could do for them they would find him willing. It does not appear that they ever demanded anything of him afterwards, although the father wrote to David at two different times asking for support but received nothing from either except the rent of the home place, Adam having rented it on March 1. By some arrangement between David and Adam, jr., a stock business was carried on upon the farm in controversy under the name of Scott Bros. Out of the rents received for the home place the parents have the taxes to pay, and interest upon a mortgage upon it, leaving them $180 per year, which is all

they have had to live on since Adam, jr., ceased to
furnish their supplies.   David died in August, 1911.
Adam, jr., has had the exclusive use of the farm since
that time and has paid the taxes from the time he
took possession.   This suit was commenced April 19,
1912.   Before commencing the action a notice to quit,
in the usual form in proceedings for forcible detainer,
was served on Adam, jr., and also on him as survivor
of the firm of Scott Bros.   David paid $2500 of the
principal of the mortgages, and it seems placed another
mortgage upon the farm for $1000.   It is presumed
that the brothers have paid the interest also.   The as-
sessed value of the farm is $16,765, and its rental value
was $1100 per year for the three years preceding the
trial.

While the details of the agreement between David
and his parents are not definitely shown, it appears
that it provided for their support from this farm—and
it may fairly be presumed that the condition in the
deed related to this agreement.   This relation further
appears from extrinsic evidence.   The father when
asked why this reservation was made said:

"I thought I had a perfect right to put it in that
way; I gave him so much of it and retained so much of
it for my future use.   .   .   .

"Q. You did not claim possession of this land at any
time during David's lifetime?   A. No, sir.   I had no
need to.   David tended well to us while he was with us.
.   .   .   My intention was that I should have possession
of this land if it became necessary for me to rent it for
our support."

In a paper filed in the probate court, after referring
to David's agreement for support, he stated:

"That for the purpose of securing the performance
of said agreement, claimant reserved in said deed of
conveyance a life interest and estate therein for him-
self and his said wife."

It is the contention of the defendant that the condi-
tion was put in the deed merely to secure the agree-

ment for support; that the parents accepted Adam, jr., in place of David to perform the agreement, and as they did not demand performance from Adam, jr., there was no default on his part and hence there can be no recovery of possession; and that in any event the remedy for any default would be an action to recover the value of the support withheld.

The district court decided that the reservation in the deed was invalid and insufficient to reserve to plaintiffs, or either of them, an estate for life in the premises, and that they, nor either of them, were entitled to the possession of such premises, nor to any damages for the detention thereof.

Neither the abstracts nor briefs inform the court of the particular reasons for this conclusion. It is not contended that the reservation contradicts the grant, and no sufficient grounds appear for holding the reservation void, and it must be held that a life estate was effectually reserved in the deed.

The next inquiry is whether the plaintiffs should recover the possession or be remitted to an action for support, as contended by the defendant. The condition and the oral agreement should be considered in their relation to each other and in the light of all the attendant circumstances, and the intention of the parties should be carried into effect so far as possible. The parents relied upon the fidelity of David, with whom they contracted, and while his health permitted him to exercise personal care they lacked nothing. When his brother offered to take his place they made no objections, doubtless believing that he would act with equal faithfulness. For a short time he attended to their wants, and then, without any modification of the agreement and without consulting with his father, he left them upon the statement of his mother that other arrangements for their support had been made with another son. It seems that the father did not rely upon these other arrangements, but called upon David, with

whom the contract had been made, to comply with its terms. Whether David informed Adam of this request does not appear, but nothing was done. The parents were left with only $180 a year for their support. Adam was enjoying the revenue of this large farm, yielding a rental value of $1100 per year. His father and mother were old and in need. Considering their age, it may fairly be presumed that they not only needed money, but also the care and attention that a son who had undertaken to support them should give and which is implied in such agreements. It is true that they made no special demand upon him, but it was his duty to ascertain whether the arrangements referred to by the mother were being carried out and to see that they were furnished the supplies which their comfort reasonably required. The clause in the deed should not be narrowly construed into a mere mortgage or conventional security. It was placed there for a broader purpose. They did not contract for a lawsuit, but for present and continued support, reserving the use of the farm while they lived that this support might be assured beyond question. They did not contemplate that a formal demand would be necessary in order that they might have the ordinary comforts of life. The alternative of a suit for damages would leave them dependent on charity while the slow processes of the law were going on. The son who undertook to discharge his brother's obligation owed a higher duty than to wait for a demand. He should have ascertained their condition and supplied their needs.

Treating the promise of support made by David as a sufficient consideration for the possession taken by him against the terms of the reservation, such possession can not be withheld by his successor without fulfilling that promise, for possession was held upon that condition. An action for damages is not deemed an adequate remedy in the situation disclosed by the evidence.

This conclusion is reached without deciding whether there was sufficient proof that the defendant was entitled to all the rights of his brother or the precise nature of those rights.

The plaintiffs should have judgment for the possession of the farm while they live and during the lifetime of the surviving spouse, and for the value of its use for the three years preceding the commencement of the action, subject to deductions for taxes and interest paid and other proper counterclaims, if any, that may be found equitable by the district court.

The judgment is reversed and the cause remanded for further proceedings.